# 476 DELANEY v. VALENTINE.

**William J. Delaney**, as Receiver in Supplementary Proceedings of the Property of **Thomas B. Valentine**, A*ppellant, v. **Thomas B. Valentine** and Others, Respondents.

*Mortgage by a debtor with a trust in his own favor, fraudulent — chattel mortgage in trust — when void as to the creditors of the mortgagor — when title is immediately vested in the mortgagee — how a failing dealer may put his estate in trust.*

A conveyance by a debtor, whether solvent or insolvent, of all his property to a trustee to pay a portion of his creditors, with the provision that the surplus shall be returned to him, leaving other creditors unprovided for, is fraudulent and void as to such latter creditors.

The creation of a trust in a chattel mortgage, given for the benefit of certain preferred or favored creditors, named therein, who are not mortgagees, alters the rights of other persons who are creditors of the mortgagor, but whose debts are not provided for in the trust created by the mortgage, and where such a trust, so far as the surplus or excess is concerned, is for the benefit of the mortgagor it is in contravention of the provisions of the statute, and, whether the surplus is large or small, and whether there is or is not in fact a surplus, is immaterial.

Where a chattel mortgage is given to secure debts, some of which are due when it is given, the mortgagor is in default from the moment the mortgage is delivered, and by operation of law the title to the mortgaged property vests at once in the mortgagee subject to the performance of the trust thereby created.

When a trader or dealer fails, and proposes to put his estate in trust, he must devote the whole of it immediately and unconditionally to the payment of his indebtedness, and it is only on those terms that he is allowed to withdraw it from the ordinary process of the law. He must reserve nothing to himself, but must give all to his creditors.

Appeal by the plaintiff, William J. Delaney, as receiver in supplementary proceedings of the property of Thomas B. Valentine, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Saratoga on the 3d day of January, 1894, upon the decision of the court rendered after a trial at the Saratoga Special Term dismissing the plaintiff's complaint upon the merits.

*Winsor B. French*, for the appellant.

*W. P. Butler* and *Edgar T. Brackett*, for the respondents.

Mayham, P. J.:

This action was prosecuted by the plaintiff, as receiver of the property of Thomas B. Valentine, to have two chattel mortgages

executed to Ann A. Lockwood and an assignment of certain choses in action to William H. Lockwood declared fraudulent and void as to the claims of the plaintiff, as receiver, and to have the same set aside as to the plaintiff as such receiver, on the ground that the same were given by the defendant Thomas B. Valentine, and received by the said defendants Ann A. Lockwood and William H. Lockwood, for the purpose and with the intent of hindering, delaying and defrauding the plaintiff as such receiver, a creditor of the said Thomas B. Valentine.

The defendants Ann Lockwood and William H. Lockwood joined in an answer denying the allegations of fraud, setting up the mortgages to Ann Lockwood and a sale of the mortgaged property at public auction, at which the defendant William H. Lockwood purchased the same.

The answer also set up the assignment of the accounts to William H. Lockwood by the defendant Valentine, as collateral to the payment of the debts of Valentine to certain other persons.

The defendant Valentine, by separate answer, alleged that the mortgages and assignment were made in good faith and to secure actual indebtedness of such defendant, and that the mortgagee took possession of the mortgaged property and actually sold the same for the sum of $5,000 to William H. Lockwood, who took actual possession of the same, and also alleged that the assignment of the accounts to William H. Lockwood was to secure actual indebtedness of the defendant Valentine to certain persons named in the assignment, and was in good faith without any design to defraud creditors. The answer also charged that the appointment of the plaintiff as receiver was irregular and void.

The trial judge dismissed the complaint, and from the judgment entered on such dismissal the plaintiff appeals.

The case discloses that on the 23d day of March, 1863, the defendant Thomas B. Valentine, who was a merchant doing business in the village of Saratoga Springs, was indebted to Ann A. Lockwood in the sum of $7,500, and also indebted on two notes, one of $1,200 and one for $180, indorsed by William H. Lockwood, and a note of $1,500, indorsed by Augusta H. Lockwood; that to secure the aforesaid debts he executed on that day a chattel mortgage covering the entire stock of merchandise owned by him, and in his

store at 468 Broadway in Saratoga Springs, which mortgage was duly filed in the town clerk's office.

Subsequently, and on the 14th day of June, 1893, the defendant Valentine executed to the defendant Ann A. Lockwood another chattel mortgage on the same store of goods, and " All the stock of goods, the fixtures and personal property of every kind and description owned by said Thomas B. Valentine situate in and about the premises No. 468 Broadway in the village of Saratoga Springs." Which mortgage was also duly filed in the office of the proper town clerk, and contained the following conditions and provisions : " Upon condition that if said party of the first part shall and do well and truly pay or cause to be paid the following notes owing by him, to wit: One made by him, said Thomas B. Valentine, for the sum of $5,000, dated July 22d, 1892, payable twelve months after date, with interest, at the First National Bank of Saratoga Springs, to the order of said Ann A. Lockwood. One made by said Valentine, dated November 10, 1892, payable to the order of said Ann A. Lockwood twelve months after date at the First National Bank, for $1,500 and interest. One made by said Valentine, dated December 2d, 1892, payable to the order of W. H. Lockwood twelve months after date, with interest, at the First National Bank of Saratoga Springs, for $1,200. One made by said Valentine, dated January 31, 1893, payable to the order of said Ann A. Lockwood twelve months after date at the First National Bank of Saratoga Springs, with interest, for the sum of $1,000. One made by said Valentine, dated March 25th, 1893, for the sum of $1,500, payable three months after date at the First National Bank of Saratoga Springs, indorsed by Augusta H. Lockwood. A note of $967.71 given by said Valentine to M. H. Berge & Sons, due July 2, 1893. A note of $1,500 given by said Valentine to Ivah Holmes, payable on demand on account of $629.75, due from said Valentine to Jay C. Wemple & Co., then these presents and everything herein contained shall cease and be void. And the said party of the first part, for himself, his executors, administrators and assigns, does hereby covenant and agree to and with the said party of the second part, her executors, administrators and assigns, to make punctual payments of the money hereby secured.

"And in case default shall be made in payment of the said sum

above mentioned, or in case the said party of the second part shall sooner choose to demand the said goods and chattels, it shall and may be lawful for, and the said party of the first part does hereby authorize and empower the said party of the second part, her executors, administrators and assigns, with the aid and assistance of any person or persons, to enter and come into and upon the dwelling house and premises of the said party of the first part, and in such other place or places as the said goods and chattels are or may be held or placed, and take and carry away the said goods and chattels, to sell and dispose of the same for the best price they can obtain, at either public or private sale, and out of the money to retain and pay the said sum above mentioned, with the interest and all expenses and charges thereon, rendering the overplus (if any) unto the said party of the first part, his executors, administrators and assigns. And until default be made in the payment of the aforesaid sum of money, the said party of the first part to remain and continue in quiet and peaceable possession of the said goods and chattels, and the full and free enjoyment of the same, unless the said party of the second part, her executors, administrators or assigns shall sooner choose to demand the same, and until such demand be made, the possession of the said party of the first part shall be deemed the possession of an agent or servant for the sole benefit and advantage of his principal, the said party of the second part."

On the day of the execution and delivery of the last-mentioned mortgage, and at the same time, the defendant Valentine executed and delivered to the defendant William H. Lockwood an assignment, of which the following is a copy :

" For value received, I hereby sell, assign, set over and convey unto William H. Lockwood, of Saratoga Springs, N. Y., all the accounts due or owing to me mentioned in the annexed list, and all other accounts, dues and choses in action due or owing to me as collateral security for the payment of a balance of $1,352.50, on a note of $1,500 made by me, Thomas B. Valentine, and indorsed by Augusta A. Lockwood, and owned by the First National Bank of Saratoga Springs, the sum of $147.50 being paid on said note. Also, a note of $967.71 held by M. H. Berge & Sons, due July 4th, 1893. Also, a note of $500 and interest owned by Ivah Holmes,

said Berge note and Holmes note being each made by said Thomas B. Valentine. Also, a note of $18.93 given by said Thomas B. Valentine to R. H. Trim. A claim of $282.92 owing by said Thomas B. Valentine to George W. Valentine for work. Also, a claim of $148.85 due from said Thomas B. Valentine to John W. Valentine for work. An account of $629.70, owing by said Thomas B. Valentine to Jay C. Wemple & Co., which becomes due July 2, 1893. Three notes of said Thomas B. Valentine owned by the First National Bank of Saratoga Springs; one of $50, due July 3d, 1893; one of $150, due July 9, 1893, and one of $100, due Aug. 5, 1893. Also, to pay two notes of $65 each, given to S. A. Rickard, and $83.33 for month's rent of the store No. 468 Broadway."

On the fourteenth of June, the day of the execution of the last-mentioned mortgage by the defendant Valentine to the defendant Ann A. Lockwood, she by her agents and attorneys took possession of the goods and the chattels embraced in and covered by the mortgage, and on the same day and time the defendant William H. Lockwood took possession of the accounts, notes and choses in action assigned to him under and by virtue of the assignment above set out. On the 15th day of June, 1893, a judgment was recovered against the defendant Valentine, on which an execution was duly issued and returned wholly unsatisfied, and on proceedings supplemental to execution, the plaintiff was, on the 17th day of June, 1893, duly appointed receiver, and on the twenty-ninth day of June another judgment was obtained against the same defendant, and the receivership was extended by order to the last-mentioned judgment.

The receiver, who is appellant on this appeal, insists that the mortgage to Ann A. Lockwood of June 14, 1893, and the assignment to William H. Lockwood, made on the same day by the defendant Valentine, are in violation of the provisions of 2 Revised Statutes (§ 1, p. 135), for the reason that they create a trust in favor of the mortgagor and assignor, and are, therefore, violative of the right of his creditors.

The language of that section is as follows: "All deeds of gift, all conveyances and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against the creditors existing or subsequent of such persons."

The condition in the mortgage which directs the mortgagee to sell and dispose of the property mortgaged for the payment of the amount intended to be secured, is not unlike an ordinary mortgage of chattels, and had all the persons whose debts are attempted to be secured been made mortgagees, it could hardly be maintained that the provision requiring the mortgagee to pay the surplus to the mortgagor would be such trust for his benefit as to render the mortgage void under the provisions of the statute above quoted.

Under such circumstances the legal title before breach or forfeiture would have remained in the mortgagor, liable to sale on execution, subject to the payment of the mortgage, and if the mortgage was an honest transaction, and was given to secure honest indebtedness due to the mortgagees, the creditors of the mortgagor not secured by the mortgage would have no right to complain, as their right to the surplus, after the payment of the mortgage, would in that case be in no wise impaired.

Does the creation of a trust in the mortgage for the benefit of creditors, who are not mortgagees, alter the rights of the parties who are creditors of the mortgagor, but whose debts are not provided for in the trust created for the benefit of certain preferred or favored creditors who are named in the mortgage? The same question may be asked as to the assignment made by the defendant Valentine to the defendant Wm. H. Lockwood.

Both the mortgage and assignment create a trust for the benefit of creditors of Valentine who are not parties to the instruments, and together they transfer all of his property to the mortgagee and assignee, who are to use the avails of the same in paying the debts of the defendant Valentine which are therein specified, and return to the mortgagor and assignor any surplus that may arise out of the sale of the property assigned or mortgaged to the mortgagor or assignor.

This trust, so far as such surplus or excess is concerned, is for the benefit of the mortgagor and assignor. Such a trust seems clearly in contravention of the provisions of the statute.

We are referred by the learned counsel for the respondents to the following cases: *Auburn Exchange Bank* v. *Fitch* (48 Barb. 344); *Remington Paper Co.* v. *O'Dougherty* (36 Hun, 79); *Murphy* v.

*Briggs* (89 N. Y. 446); *Knapp* v. *McGowan* (96 id. 75), in support of the contention made by him, that so long as a party devotes his property to the payment of a *bona fide* debt, no unlawful act is done, a proposition which is to some extent established by the cases cited and which cannot be doubted, when the party makes no reservation of the property to himself, in violation of the rights of other creditors. But the case of *Knapp* v. *McGowan*, above cited by the respondents, contains this very important and significant qualification, which seems to support the contention of the appellant in this case, and is stated in the syllabus of that case and supported by the decision, " that a conveyance by a debtor, whether solvent or insolvent, of all of his property to trustees to pay a portion of his creditors, with a provision that the surplus shall be returned to him, leaving his other creditors unprovided for, is fraudulent and void as to the latter." And in stating that proposition Judge EARL uses the following language : " An insolvent, or even a solvent, debtor cannot convey all his property to trustees to pay a portion of his creditors, with a provision that the surplus shall be returned to him, leaving his other creditors unprovided for, because such a conveyance ties up his property in the hands of his trustees and places it beyond the reach of his creditors by the ordinary process of the law, and thus hinders and delays them, and is, therefore, void as to the creditors unprovided for."

In the case at bar the trial court found that the defendant Valentine at the time of making the mortgage of March 23, 1893, was indebted beyond and in excess of the value of his property, and it is quite apparent from the evidence of the defendant William H. Lockwood that he and his mother, Ann A. Lockwood, knew that fact. In *Southerland* v. *Bradner* (116 N. Y. 410) FOLLETT, J., in delivering the opinion of the court, uses this language : " A preferential assignment by an insolvent of all his estate in trust for the payment of but part of his creditors, which provides that after paying the creditors named the remainder of the assigned estate shall be restored to the assignor, hinders and delays the unpreferred creditors, and it is void as against them," and he cites in support of that proposition *Goodrich* v. *Downs* (6 Hill, 438); *Barney* v. *Griffin* (2 N. Y. 365); *Collomb* v. *Caldwell* (16 id. 484).

It can make no difference in principle or in the practical effect of such an assignment whether the surplus provided for is large or small, or whether indeed there is or is not in fact any surplus; the vice consists in its effect in hindering and delaying the other creditors in the use of the ordinary remedies for the collection of these debts. (*Knapp* v. *McGowan, supra.*)

But the respondents urge that the ordinary remedies available to other creditors were not suspended by the giving of this mortgage and the simultaneous execution and delivery of the assignment, and in support of this contention cite *Murphy* v. *Briggs* (89 N. Y. 446).

But it will be observed that in that case no trust was created by the mortgagor in the mortgage, for the benefit of other creditors not named as mortgagees, and the mortgage was the ordinary case of a mortgagor giving a mortgage in the usual form to secure the debt due the mortgagee in person, and the mortgage did not, as in this case, create a trust in favor of other creditors.

It is true that the Common Pleas of New York, in *Royer Wheel Co.* v. *Frost* (13 Daly, 233), held that a mortgage somewhat like the one under consideration, upon the authority of *Murphy* v. *Briggs*, was a valid security. But no such conditions existed in the case of *Royer Wheel Co.* v. *Fielding* (101 N. Y. 504), to which we are referred, nor did that case affirm the determination of the New York Common Pleas, in *Royer Wheel Co.* v. *Frost (supra)*.

It is quite apparent from this transaction that the simultaneous transfer of all of the property of Valentine by this mortgage and assignment was for the purpose of placing the same within the control and at the disposal of the mortgagee and assignee, not only for the purpose of securing and paying their claims, but also for the purpose of securing to the other beneficiaries and *cestui que trusts* therein named their claims, to the exclusion of other creditors of Valentine not referred to in those transfers.

The mortgage was to secure debts, some of which were due when it was given, and the mortgagor was in default the moment the mortgage was delivered, so that by operation of law (if this transaction was valid) the title to the mortgaged property vested at once in the mortgagee, subject, of course, to the performance of the trust therein created. This rule has long been well settled, and in *Moore*

*v. Prentiss Tool & Supply Co.* (133 N. Y. 149) Judge EARL, in discussing the rights of parties to a chattel mortgage, says: "After default in the payment of the plaintiff's mortgage, whatever title the mortgagor had was vested absolutely, subject to the right of redemption in equity in the plaintiff (mortgagee)."

In the case at bar the mortgagee, availing herself of the title thus acquired, immediately took possession of this property, advertised and sold it to the defendant Wm. H. Lockwood, and thereby cut off all equity of redemption of the other creditors of the mortgagor. Under such circumstances it can hardly be said that the trust created in this mortgage did not have the effect to hinder and delay other creditors in the ordinary proceeding for the collection of their debts. The case is not like *Royer Wheel Co.* v. *Fielding* (101 N. Y. *supra*). In that case no trust was created for the benefit of third parties, and the mortgage under discussion then was a real estate mortgage, under which a forfeiture or breach of condition did not work a change of the title as in this case, and in the discussion of that case MILLER, J., says: "This is the usual clause in every mortgage upon real estate, *and as here employed cannot be regarded as of the same character as if used in an assignment of property for the benefit of creditors specially preferred, in which case it would render the assignment inoperative and void.*"

In a real estate mortgage the surplus on foreclosure passes to the person entitled to the same under the order of the court. But the surplus provided for in this mortgage is reserved to the mortgagor after the satisfaction of the trust provided for in the instrument itself, and in effect the trustee, who is also mortgagee, is charged with the duty of returning such surplus to the mortgagor, without regard to the rights of other creditors who are not provided for in the mortgage. In no light in which we can examine this mortgage and assignment can we escape the conclusion that a trust is created by this mortgage for the benefit of the mortgagor's creditors named therein, and that the surplus is reserved to the mortgagor who makes the transfer and creates the trust for his own benefit.

To allow such a transfer, in the name of a chattel mortgage, to stand in the way of *bona fide* creditors of the mortgagor or assignor would seem to furnish an easy method for a debtor to transfer his property in a manner that hinders and delays his creditors, and at

the same time secure to himself the remainder of his estate in violation of the plain intent, if not of the letter, of the statute.

The trial court finds that at the time Valentine made this mortgage and assignment he was insolvent and expected to be closed. Under such circumstances, his transfer of all his property was in the nature of a general assignment, and any reservation of an interest in the property assigned to himself rendered the transfers void within the statute referred to.

In *Curtis* v. *Leavitt* (15 N. Y. 9) the court holds that where a security is given in the ordinary course of business, with a provision that after the payment of the debt the balance or surplus shall belong to the mortgagor or grantor, no illegal trust is created in the surplus. But the same case holds at page 132 as follows: " But when they are made in favor of an insolvent who winds up his affairs by an assignment of his whole estate, then they have been justly regarded as high and sometimes conclusive evidence of a fraudulent design." The principle, indeed, which runs through this whole branch of our law is that when a trader or dealer fails, and proposes to put his estate in trust, he must devote the whole of it, immediately and unconditionally, to the payment. It is only on those terms that he is allowed to withdraw it from the ordinary process of the law. He must reserve nothing to himself, but must give all to his creditors.

Upon the facts of this case and within the principle here enunciated, we think that the learned trial judge erred in nonsuiting the plaintiff, and for that error the judgment must be reversed.

HERRICK, J., concurred; PUTNAM, J., not acting.

Judgment reversed, new trial ordered, costs to abide the event.